**EVANS v. CLOCKER et al.**
**Patent Appeal No. 3121.**

Court of Customs and Patent Appeals.
April 17, 1933.

D. P. Wolhaupter, of Washington, D. C. (Emory L. Groff, of Washington, D. C., of counsel), for appellant.

Strauch & Hoffman, of Washington, D. C. (James A. Hoffman, of Washington, D. C., of counsel), for appellees.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

Three counts are at issue in this interference proceeding, numbered, respectively, 1, 2, and 3. Count 1 is illustrative and follows: "1. A guiding and lubricating device for the travellers of spinning machines comprising an annular lubricant receiving channel member, a traveller guide extending inwardly from one wall of said annular lubricant receiving channel member, and an annular opening between said guide and the other wall of said annular lubricant receiving channel member adapted to receive and guide the ends of the traveller."

On certain types of spinning machines there are metal spinning rings with which traveler bars are used. The rings and bars work in a frame or a holder, and the threads being worked upon when the machine is in actual use has the effect of raising the trav-eler bars upward and keeping them in sliding contact with the under side of the spinning rings. The ends of the traveler bars, working underneath the rings, if not oiled, wear quickly. It has long been a problem to oil the ends of the traveler bars without soiling the threads as they come in contact with the device. The involved invention, broadly speaking, consists in providing an annular lubricating pan or chamber in the frame holding the rings into which oil is placed, and into which the ends of the traveler bars drop when the threads slacken. When the machine again operates, the oil is lifted to the rings and thus wear is avoided.

Evans claims conception of the invention in September, 1926, and reduction to practice within a few days thereafter. He filed his application on July 25, 1927.

Appellees filed their joint application on August 27, 1927, claimed conception late in the year 1926 but after September, and claimed that they reduced the invention to practice prior to March, 1927.

Evans at one time claimed that the appellees received their invention from him. On hearing here, counsel for Evans withdrew the question of originality. Appellees claim that Evans received his knowledge of his invention from them. They base this claim upon the fact that the office where Evans worked was adjacent to and nearby the room where the Clocker and MacFarlane exhibits were being tested, together with certain statements made to Evans by Jones and Haas, fellow employees. Evans denies knowledge of such statements.

Both tribunals held that there was not sufficient evidence to show that either party obtained the invention from the other, and that, therefore, the record presented a case of priority in separate inventions. With this conclusion we agree.

Evans claims to have conceived his invention in the middle of a night in September, 1926, explained it to his wife, and in a few days thereafter constructed his Exhibit 2 which is in part of lead. Portions of his testimony were corroborated by his wife and brother-in-law. The testimony in this regard is well set out and discussed in the Board's opinion and follows:

"Concerning the question of priority, Evans claims to have conceived the idea of causing the ends of the traveller to dip up drops of oil from a supply and thereby impart oil to the underside of the guide ring, at 2:30 one morning. His testimony as to this occurrence is as follows:

" 'Q. 25. Please recite the circumstances under which you disclosed it to your wife? A. After I saw the trouble that was composed in the Wilkes-Barre Silk Company of soiled silk it got in my mind about getting a new ring of some sort. I went home and about 2:30 in the morning I woke up. I also woke my wife up and she says to me what's the matter and I said come down stairs and I will show you. She came down, I went out in the shop and had a few extra fliers there, I came back, I took a small machine oil can and dumped some oil in the palm of my hand, I took the traveler and dipped one end of it in the oil and as I raised it up it formed one drop. I took the other end and put it in the palm of my hand in the oil and also raised that up, that also formed a drop, which I done several times which brought me to the idea of forming an oil well for 5 B spinning-machines.

" 'Q. 26. In your last answer you stated you had "a few extra flyers there." Did you mean that? A. No I meant travelers.'

"This was testified by Evans as being 'around the middle of September 1926.' Evans' wife, Mrs. Rheda A. Evans, corroborates her husband as to this incident but it is not apparent that the simple test described is a conception of the elements required by the counts or a disclosure of such complete combination to the wife. It is not made clear whether Evans at that time conceived how the oil was to be applied to the ends of the traveler. While he states that the experiment of dipping oil from his hand by the end of the traveler brought him to the idea of forming an oil well, it is not stated when this latter feature was conceived or disclosed. He does not state that it was described to his wife nor does Mrs. Evans mention any annular oil pan. We are of opinion that the merits of this claimed disclosure are not sufficient to constitute proof of conception of the features required by the counts. Evans claims to have constructed an attachment very shortly after the time of the demonstration, as—

" 'Q. 27. After this demonstration you gave your wife, what next did you do? A. I went and made one very shortly after.

" 'Q. 28. How soon after, the next morning or when? A. Very close. Around Saturday or Sunday.

" 'Q. 29. Where were you living when you made Exhibit No. 2? A. When I made this Exhibit No. 2, I was living at 137 Hartford Street, Ashley.'

"Exhibit No. 2 is an annular pan with integral ears and formed of soft metal apparently lead. It has obviously been turned upon a lathe as testified. The exhibit also comprises a guide ring. Evans' wife and brother-in-law—R. E. Christman—corroborates him in testifying that he made the lead pan portion by casting lead and turning it on a lathe. Mrs. Evans gives no information as to when the pan was made except that it was made while Mr. Evans' shop was on the front of lot No. 135, Hartford St. The shop remained there until May 1927. Christman is definite as to the date which he claims to determine by reference to a trip to the town of Indiana, Pennsylvania and the parade of the Klansmen in Washington, D. C. of September 13, 1926. Evans testifies that he did not explain the purpose of the pan to Christman:

" 'Q. 247. Did you explain to Mr. Christman what you were doing? A. No, I didn't, because it wouldn't interest him,'
"—and Christman states he did not know what parts were necessary in addition to the pan to complete the device.

" 'Q. 27. Did you know or did he tell you what was necessary to make it complete? A. No he didn't.'

"Mrs. Evans fails to make clear whether she knew what the complete combination was to be. It is not contended by Evans that either of these witnesses or any other person besides himself saw the complete assembly pan, guide ring and traveler and it is clear from the record that no one besides himself saw the assembly applied to a spinning machine and operated. All of this data which is essential as corroboration of Evans is lacking. We are unable to agree that the experiment with the oil or the construction of the lead pan are sufficiently complete in themselves to entitle Evans to the dates thereof for conception. The test or operation of the device which Evans claims he made by secretly applying it to cooperate with one of the spindles of a spinning machine at the Wilkes-Barre Silk Co. fails as a reduction to practice because of lack of any corroboration whatever. It further appears that considerable doubt is raised as to these tests by the rebuttal testimony on behalf of Clocker and MacFarlane which shows that during the time that Evans claims to have tested Exhibit No. 2 on the spinning machine, they were equipped to receive smaller guide rings and holders than those of Exhibit No. 2 and that the attaching screws on the ring rails would

not register therewith to properly center the holder and ring. We find no error in decision of the Examiner of Interferences in thus not according Evans benefit of these matters for conception and reduction to practice."

The Examiner of Interferences held that Evans did not conceive the invention before the latter part of May, 1927. The Board of Appeals gave Evans no conception date earlier than the date of reduction to practice by the appellees. Evans was awarded no date earlier than his filing date for reduction to practice. His alleged testing of the device on the machines of the company for whom he worked is discussed and analyzed by the Board and a repetition of the same is not necessary here, since we arrive at the same conclusion in this respect as was arrived at by the Board.

 The Board held that the testimony of three witnesses, Jones, Haas, and Bogert, fellow workmen in the Wilkes-Barre Silk Company plant, showed appellees' conception in the early part of 1927. It also stated that the same testimony would appear to support reduction to practice of the counts involved. The Board concluded that appellees' reduction to practice was certainly established by the commercial installation of devices like Exhibit No. 4 on machines of the mill, which installation was commenced at least before June 10, 1927. The Examiner of Interferences pointed out that appellees' reduction to practice must have occurred at least prior to the annual stockholders' meeting of the Wilkes-Barre Silk Company in the latter part of March, 1927, since at that time the record shows that the invention was there discussed. The witnesses testified that one of the exhibits involving the invention at bar was tested and operated successfully prior to this meeting, and that at such meeting commercial installation of the device was authorized. There are other circumstances and facts, supported by some documentary evidence, which confirm the conclusion that the appellees had fully reduced the invention to practice prior to the date given Evans for his conception.

The Board of Appeals of the United States Patent Office held that the appellees, under these circumstances, were the prior inventors of the invention involved in the three counts here on appeal and awarded priority to the appellees.

 We have carefully considered the evidence in the record and the arguments of appellant's counsel, but we are not convinced that the concurring findings of the two tribunals below are manifestly wrong. Under these circumstances, the decision of the Board should not be reversed. Clancy v. De Jahn, 36 F.(2d) 131, 17 C. C. P. A. 714; Stern v. Schroeder, 36 F.(2d) 515, 17 C. C. P. A. 670; Stern v. Schroeder, 36 F.(2d) 518, 17 C. C. P. A. 690; Oldroyd v. Morgan, 58 App. D. C. 78, 24 F.(2d) 1004. On the contrary, for the reasons stated in the Board's opinion, we think the decision of the Board was correct and the same is affirmed.

Affirmed.